J-A07025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF SARA GRIMM, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: WILLIAM L. GRIMM | No. 1186 WDA 2014 |

Appeal from the Order June 23, 2014
In the Court of Common Pleas of Mercer County
Orphans' Court at No(s): 2011-153

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 23, 2015**

William L. Grimm appeals from the order of contempt entered in the Court of Common Pleas of Mercer County.  Upon careful review, we vacate the contempt order.

The relevant factual and procedural history of this matter is as follows. Sara Jane Grimm ("Decedent") died on February 28, 2011, leaving a will dated January 25, 2005, in which she appointed her daughter, Rebecca J. Bernhard, appellee herein, as Executrix.  On March 31, 2011, Executrix filed a petition for citation, directed to Appellant,[1] to show cause why he should not be ordered to file an account of his actions as agent under a power of attorney executed by Decedent on or about November 30, 2010.  Among the allegations in the petition were that "several checks for large amounts of

_____

[1] Appellant is Decedent's stepson.

money that were made payable to [Appellant] by [Appellant] in his capacity"
as Agent had not been accounted for.  Petition for Accounting, 3/31/11, at ¶
8.  By order dated June 27, 2011, the court directed Appellant to provide
Executrix with an account of his term as Agent, which Appellant did.
Executrix filed "exceptions" to the account, alleging, *inter alia*, that Appellant
used the power of attorney to transfer to himself the sum of $77,000 in
contravention of the authority granted under the document.  The Executrix
also requested that the court find Appellant in contempt for failing to comply
with the June 27, 2011 order and sought reimbursement for her costs and
attorney's fees.

Appellant responded to the exceptions, denying that he had improperly
converted funds from the Decedent and asserting that the Decedent had
made lifetime gifts to him and other individuals.  He also attached a
supplemental account.  The Executrix filed a discovery motion, which the
court denied as premature.

Thereafter, Appellant, represented by new counsel, filed an answer to
the petition for account filed by the Executrix in March 2011.[2]  In that
answer, Appellant asserted that the Decedent had an account at First
National Bank of Pennsylvania containing $77,746.19, which the Decedent
instructed him to close and take the balance as a gift to Appellant and his

---

[2] The Appellant had not previously filed an answer to the petition, although
he had submitted an account.

wife.[3]    Appellant subsequently withdrew $77,000 from the account and deposited it in an investment account in his own name.

In July 2012, the Executrix filed a motion to compel discovery and to establish an escrow account, into which Executrix requested that Appellant be required to deposit the funds he allegedly misappropriated using the Decedent's power of attorney.  The court held a hearing on that motion on November 2, 2012, after which it entered an order directing that Appellant: (1) provide Executrix with all statements from the investment account containing the proceeds of Decedent's First National Bank of Pennsylvania account; (2) not make any withdrawals from the investment account pending further order of court; and (3) provide Executrix with statements from all of his bank accounts.

On December 18, 2012, Executrix filed a motion for contempt, claiming that Appellant had failed to comply with the November 2, 2012 order by not providing certain discovery.  Prior to the date of a scheduled hearing, Appellant turned over some discovery to Executrix, who requested the hearing be continued as a result.  After reviewing the documents provided by Appellant, Executrix once more filed for contempt, claiming the discovery was incomplete and not in compliance with the court's order.

---

[3] Appellant claims that the source of the funds contained in the account was his father and mother.  His mother passed away in 1992 and his father thereafter married the Decedent.

Executrix also requested that Appellant be required to pay her fees and costs and turn over to the estate the $77,000 allegedly given to Appellant by the Decedent. After meeting with counsel in chambers, the court entered an order directing the parties to meet to review previously produced discovery and create lists of any missing items.

On March 7, 2014, Executrix once again filed a petition for contempt, alleging that Appellant still had not turned over certain missing items of discovery and requesting that Appellant be required to reimburse the estate for costs and expenses incurred in its attempts to obtain discovery. Appellant responded, averring that he had, in fact, provided all relevant information. He also asserted that, because he had actually provided an account and a supplemental account, he should not be required to pay costs and fees absent a finding by the court that he be surcharged.

The court held a hearing on April 24, 2014, after which it entered an order directing the Appellant to provide within ten days an affidavit regarding the disposition of the contested $77,000. The court also issued an order scheduling a status hearing, at which time it would determine if any outstanding discovery issues remained and would impose sanctions if necessary.

On May 14, 2014, counsel for Appellant had an *ex parte* meeting with the Honorable Thomas R. Dobson, P.J.,[4] at which time counsel revealed, pursuant to Rule of Professional Responsibility 3.3., that Appellant had misrepresented to the court that he had not spent any of the disputed $77,000. Counsel told Judge Dobson that Appellant had, in fact, spent $27,000 of that money. This meeting was transcribed and, pursuant to an order entered by Judge Dobson, sealed, to be provided only to the Honorable Daniel P. Wallace, the presiding judge. Judge Dobson also ordered that counsel immediately file a motion to withdraw his appearance on behalf of Appellant. Finally, Judge Dobson ordered that the remaining funds be paid into escrow with the Register of Wills. Counsel was subsequently permitted to withdraw his representation. Judge Wallace also reviewed the transcript of the May 14, 2014 *ex parte* meeting and directed the Register of Wills to reseal the transcript.

On May 19, 2014, Executrix filed yet another petition for contempt, claiming that Appellant had failed to comply with the court's April 25, 2014 order directing him to file an affidavit regarding the disposition of the contested $77,000. Instead, Executrix asserted, Appellant forwarded an unsworn verification outlining the whereabouts of amounts adding up to only $50,000. The court scheduled a hearing on the petition for contempt, to be

---

[4] Judge Dobson was not the presiding judge in this matter.

held on June 20, 2014. Appellant claims that there is no proof in the record that notice of either the petition or the hearing was given to him.

On June 18, 2014, the Executrix filed yet another petition for contempt, asserting that only $20,000 had been deposited with the Register of Wills as directed by the court. However, Appellant again claims that "[t]here is no evidence in the record this second [p]etition for [c]ontempt was served on the Appellant or the Rule was served on either the Appellant or his former counsel." Brief of Appellant, at 19.

Appellant appeared *pro se* at the contempt hearing held on June 20, 2014. At the hearing, the court did not take evidence or testimony from either party. Rather, the court took the bench and immediately stated its conclusions that: (1) a suitable affidavit had not been provided by the Appellant; and (2) Appellant misled the court with regard to the $77,000. While the court did not specify its basis for concluding that Appellant had misled the court, it nevertheless entered an order directing Appellant to pay Executrix' fees and costs, and stated that if the fees and costs were not paid in full by June 27, 2014, Appellant "shall report to the Mercer County Jail." N.T. Contempt Hearing, 6/20/14, at 4.

Having retained new counsel, Appellant filed exceptions to the June 20, 2014 contempt order on July 21, 2014, in which he alleged that he "was unable to determine what [c]ourt [o]rder the contempt was based on, nor . . . . what conduct, [c]ourt [o]rder or factual basis existed for the contempt finding." Brief of Appellant, at 20. Appellant also claimed that the court's

order was unclear as to whether his contempt was civil or criminal and that he was not provided an opportunity to retain new counsel, be heard, and present a defense. Appellant also filed a notice of appeal on July 21, 2014, followed by a Pa.R.A.P. 1925(b) statement.

On August 29, 2014, Judge Dobson entered an order allowing "for the unsealing of the [May 14, 2014 *ex parte* meeting] transcript for the purpose of allowing Judge Wallace to review [it] with [Appellant's] counsel" at a post-appeal conference. On September 2, 2014, Judge Wallace issued an order clarifying his contempt order as follows:

> The contempt [o]rder dated June 20, 2014, is hereby amended to specify that Appellant was held in contempt for failing to abide by Judge John Reed's [o]rder of November 2, 2012, and the [o]rder of May 14, 2014, and May 19, 2014, by Judge Thomas Dobson.

Trial Court Order, 9/4/14.

On September 8, 2014, the trial court issued an order directing that the May 14, 2014 transcript be resealed. Finally on September 19, 2014, Judge Wallace issued a Rule 1925(a) opinion, in which he defended his contempt order as follows:

> On September 2, 2014, this [c]ourt met with Appellant's counsel for a post-appeal conference. At that time, this [c]ourt shared with Appellant's counsel a sealed transcript containing a summary of why Appellant's previous counsel was withdrawing his appearance. President Judge Thomas R. Dobson heard prior counsel's reasons for withdrawing because this [c]ourt was unavailable. More importantly, because prior counsel's reasons were subject to attorney-client privilege, Judge Dobson ordered the transcript of the proceeding be sealed.

While it is true that this [c]ourt failed to state the reason for finding the Appellant in contempt at the contempt hearing on June 20, 2014, this [c]ourt informed Appellant's counsel at the post-appeal conference that the information contained in the sealed transcript was the reason for finding Appellant in contempt. Furthermore, this Court then entered an amended [o]rder dated September 2, 2014 setting forth the reasons for contempt in a manner that did not divulge the privileged information contained in the sealed transcript. In light of the amended [o]rder, this [c]ourt believes Appellant's basis for his appeal has been remedied, and that the appeal should be dismissed.

Trial Court Opinion, 9/19/14, at 1-2.

Appellant raises the following issue for our review:[5]

Whether the [t]rial [c]ourt erred in its contempt finding which was made without the [c]ourt providing due process to the Appellant, including [denying] the Appellant . . . sufficient notice of the contempt allegations, conducting a hearing which [failed to] provide[] the Appellant the opportunity to defend against the allegations, and ordering purge conditions before adjudicating the Appellant in contempt, as well as [failing to] require[e] the complaining party to prove her allegations of contempt.

Brief of Appellant, at 5.

When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. To be in contempt, a party must have violated a court [o]rder, and the complaining party must satisfy that burden by a preponderance of the evidence.

Attorney fees may be assessed as a sanction for the contemnor's refusal to comply with a court [o]rder, causing the innocent party to incur fees in an effort to obtain what was rightfully his.

---

[5] Because we grant Appellant relief on this claim, we need not address the second claim raised by Appellant in his brief.

*Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009) (internal citations omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013). The complaining party must prove these elements by a preponderance of the evidence. *Barrett v. Barrett*, 368 A.2d 616, 621 (Pa. 1977). A mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt. *Habjan*, 73 A.3d at 637. Present inability to comply is an affirmative defense, which must be proved by the alleged contemnor. *Barrett*, 368 A.2d at 621.

> Finally,
>
> When holding a person in civil contempt, the court must undertake: (1) a rule to show cause; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt. Fulfillment of all five factors is not mandated, however. The essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard.

*In re Cullen*, 849 A.2d 1207, 1211 (Pa. Super. 2004) (citations and punctuation omitted).

Here, the trial court created no record to support its finding of contempt. The court held Appellant in contempt without (1) requiring Executrix to prove Appellant's noncompliance by a preponderance of the

evidence or (2) providing Appellant an opportunity to be heard or defend himself in any manner. Moreover, the record is devoid of any indication that Appellant was provided with proper notice of either the Executrix' petition for contempt or the trial court order scheduling a hearing thereon.[6] In **Wood v. Geisenhemer-Shaulis**, 827 A.2d 1204, 1209 (Pa. Super. 2003), this Court vacated a contempt order where the trial court had heard oral argument but did not convene an evidentiary hearing, in contravention of the alleged contemnor's due process rights. The Court noted:

> With respect to the [due process] inquiry, we find that the trial court erred in finding [Appellant] in civil contempt without an evidentiary hearing. The trial court's finding was entered after oral arguments, which did not allow [Appellant] to testify or introduce evidence that would purportedly excuse his inability to comply with the court's . . . order. By extension, we cannot ascertain whether [Complainant] met his burden of proof, although under the facts of this case, [Appellant] clearly failed to timely comply with the trial court's order.

**Id.** at 1209 (internal citations omitted). In the matter *sub judice*, the trial court failed to even give Appellant the benefit of oral argument, and instead made an immediate finding of contempt upon taking the bench.

Moreover, the trial court's contempt order fails to indicate which order of court the Appellant had violated. Indeed, the court itself conceded in its Rule 1925(a) opinion that "it is true that this [c]ourt failed to state the

---

[6] In that regard, we note that the trial court scheduling order bears a notation that it was sent to two attorneys, neither of whom represented Appellant. Indeed, the contempt order itself appears not to have been served upon Appellant as required by Pa.R.C.P. 236(a).

reason for finding Appellant in contempt at the contempt hearing on June 20, 2014[.]" It was not until approximately two and one half months later, and after Appellant filed his notice of appeal, that the court on September 2, 2014, issued an amended order specifying that Appellant was held in contempt for "failing to abide by Judge John Reed's [o]rder of November 2, 2012, and the [o]rder of May 14, 2014, and May 19, 2014, by Judge Thomas R. Dobson." Trial Court Order, 9/2/14, at 1-2.

Even on appeal, the parties remained unclear as to the basis for the contempt finding. Executrix stated the following in her brief:

> The Appellee is unable to cogently address the issue of upholding the [c]ourt's determination of Appellant's contempt because the exact basis for that ruling has been withheld from Appellee.

Brief of Appellee, at 4.

Based on the foregoing, it is readily apparent that the trial court abused its discretion in holding Appellant in contempt without an evidentiary hearing. While it is clear from the record that Appellant has failed to comply with certain of the court's directives, due process requires that Executrix prove Appellant's violations by a preponderance of evidence after a hearing held following due notice. As such was not done in this case, we are constrained to vacate the order of contempt.[7]

---

[7] It appears that the proper course for the court to follow on remand is to proceed with a hearing on the objections filed by the Executrix to Appellant's account to determine whether the $77,000 fund was, in fact, a gift from the decedent to the Appellant. In the event the court, after a full hearing,
*(Footnote Continued Next Page)*

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/23/2015

*(Footnote Continued)* ────────────

determines that the money was not a gift, a surcharge may be imposed against the Appellant.